UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
THOMAS WILLIAMS,                              :
                         Plaintiff,                :
                                 :        **OPINION AND ORDER**
 v.                                          :
                                 :        15 CV 28 (VB)
ALLEN JACOBSON, REINHARD WILLEM,             :
and BRITTA VIERECKL-PRAST,                    :
                    Defendants.             :
--------------------------------------------------------------x
Briccetti, J.:

Plaintiff Thomas Williams, an inmate proceeding pro se, brings this Section 1983 civil

rights action, alleging defendants deprived him of adequate dental care in violation of his Eighth

Amendment rights while incarcerated at Sing Sing Correctional Facility.  Defendants Allen

Jacobson, Reinhard Willem, and Britta Viereckl-Prast are dental care personnel with the New

York State Department of Corrections.

Defendants moved to dismiss the complaint under Rule 12(b)(6).  (Doc. #31).

For the reasons set forth below, defendants' motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded factual

allegations in the complaint and draws all reasonable inferences in plaintiff's favor.

The following facts are drawn from the complaint and documents on which plaintiff relied in

bringing suit.  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (noting the

1

court may consider documents integral to the complaint if it is clear on the record that no dispute

exists regarding the authenticity or accuracy of the documents).[1]

In 2001, plaintiff received his first set of dentures while incarcerated at Southport

Correctional Facility.  In 2008, plaintiff's dentures were repaired while he was incarcerated at

Clinton Correctional Facility.  He did not receive new dentures at that time.  Plaintiff was

transferred to Sing Sing in 2010.

During the relevant time period, defendant Willem was plaintiff's dentist at Sing Sing,

defendant Jacobson was the dental director at Sing Sing, and defendant Viereckl-Prast was the

regional dental director.

In mid-January 2012, a tooth broke off of plaintiff's dentures.  Plaintiff contends he

began suffering "constant daily serious pain at [his] upper gums . . . when chewing foods."

(Doc. #2 at 4).

On January 30, 2012, plaintiff requested emergency dental care.  On February 9, 2012,

Willem examined plaintiff's dentures.  Plaintiff alleges "the broken dentures['] metal frame

[was] grinding against his upper gums . . . caus[ing] cuts and bleeding [in his] mouth."  (Doc. #2

at 4-5).  Willem allegedly agreed plaintiff needed new dentures.  Plaintiff contends Willem said

he would submit a referral for new dentures, and the referral would be approved by June 2012.[2]

Plaintiff alleges Willem was lying when he said this.

---

[1]     Plaintiff submitted several administrative grievances and grievance appeals with his
complaint. (Doc. #2 at 17-48).  Because the submission has inconsistent page and paragraph
numbering, the Court cites to the page number of the entire package for ease of reference.

[2]     Although neither plaintiff nor defendants explain the referral process, the decision for an
inmate to receive new dentures appears to be made by the regional dental director in response to
a referral submitted by the inmate's treating dentist.

On April 18, 2012, plaintiff alleges he submitted another emergency dental care request "complaining of serious pain in his gums." (Doc. #2 at 5). Plaintiff also sought an update about the referral for his new dentures. Willem examined plaintiff's teeth on May 30, 2012, and allegedly told him the referral for his dentures "should be approved any day." (Doc. #2 at 5).

On July 8, 2012, plaintiff submitted another emergency dental care request, complaining of serious pain from the broken dentures. On July 18, 2012, plaintiff had an appointment with Willem. He alleges he had been waiting for over two hours when he asked a dental assistant for a form indicating he would refuse treatment that day. The dental assistant alerted Prast[3] to plaintiff's request. Plaintiff alleges Prast was visiting Sing Sing that day "for the sole purpose of investigating . . . complaints by inmates against the dental department for inadequate dental care." (Pl.'s Opp. at 3). Plaintiff alleges he then met with Prast and described his pain due to his broken dentures. Prast examined plaintiff's mouth, teeth, and broken dentures and reviewed his dental records. Plaintiff claims Prast said she would "make sure plaintiff received the dental care he need[ed] soon," and that "the time it[] [was] taking dentist Will[e]m[] to address plaintiff's dental issues [was] unreasonable." (Doc. #2 at 12).

On August 5, 2012, plaintiff filed a grievance complaint because in the two weeks that had passed since Prast examined him, no progress had been made on his dentures.

On August 13, 2012, Willem examined and cleaned plaintiff's teeth, and told plaintiff his "denture work would start by October of 2012." (Doc. #2 at 5). On August 14, plaintiff alleges Willem submitted the referral for new dentures. That same day, plaintiff alleges Prast denied the referral because her electronic records indicated, incorrectly, that plaintiff received new dentures

---

[3]   Although this defendant's last name appears to be "Viereckle-Prast," both parties refer to her as "Prast" in their submissions, so the Court does so herein.

in 2008.  In fact, according to the complaint, plaintiff's dentures were repaired in 2008, but he had not received new dentures since 2001.

On August 17, 2012, a corrections officer told plaintiff that Jacobson wanted to see plaintiff in the dental office.  Plaintiff went to see Jacobson.  After waiting an hour, plaintiff inquired about his appointment and was told Jacobson rescheduled it.  Plaintiff returned to his housing block and told a corrections officer he had been rescheduled.  Plaintiff alleges the officer called the dental office and Jacobson told the officer that plaintiff never showed up for his appointment.

On August 20, 2012, plaintiff went to see Jacobson with respect to plaintiff's grievance about the delay in receiving his dentures.  Jacobson allegedly told plaintiff the reason his dental care was delayed was his own fault, due to either leaving before being examined, or not showing up for his appointment.  Plaintiff claims this is false and Jacobson made similar false statements in his grievance responses "to cover-up for dentist Will[e]m's failure to provide plaintiff [with] proper and timely dental care."  (Doc. #2 at 10).[4]

On October 2, 2012, plaintiff submitted an emergency dental request.  He again sought information about the referral for new dentures.  He was still experiencing "daily serious pains in his mouth from broken dentures cutting [his] upper gums when plaintiff [ate] foods."  (Doc. #2 at 6).  Plaintiff alleges he was "never provided with any pain relief or a soft food special diet" while waiting for his dentures.  (Id. at 8-9).  Willem met with plaintiff the following day and told him Prast had denied the referral because "her computer showed plaintiff received new dentures in

---

[4]     On August 20, 2012, plaintiff filed a grievance complaint about being falsely accused by Jacobson for not attending dental appointments.

2008." (Id. at 6).[5]  Willem told plaintiff he would inform Prast that the computer records were

incorrect, and that plaintiff's dentures had only been repaired, not replaced, in 2008.[6]

Prast approved the referral on November 26, 2012.[7]  Willem began the first stage of the

two-stage molding process for plaintiff's new dentures on December 4, 2012.  Willem allegedly

told plaintiff Willem would do the second stage of the molding process before the end of the

year.

On February 5, 2013, plaintiff returned for the second molding.  Willem completed the

molding that day, and allegedly told plaintiff he would call him back in April.

On June 2, 2013, plaintiff submitted another emergency request complaining about the

same pain from his dentures.  On June 7, 2013, plaintiff alleges Willem told him Willem did not

"want plaintiff getting into an argument with Dental Director A. Jacobson," and rescheduled his

appointment.  (Doc. #2 at 7).

On June 10, 2013, plaintiff returned to the dental office for his rescheduled appointment.

Willem admitted to plaintiff he had made a mistake in the molding process, and "the place that

makes the dentures from the molding messed up [the] molding" too.  (Doc. #2 at 7).  Willem

recast the molding that day.

---

[5]      At an unspecified point in October, plaintiff alleges he requested copies of his dental
records.  It is unclear whether plaintiff discovered the computer records error from reviewing his
dental records himself, or from Willem at the consultation on October 3, 2012.

[6]      On October 3, 2012, plaintiff filed a grievance based on the error in his records, and
based on Willem's failure to notice the error.

[7]      Plaintiff alleges Prast approved the referral on November 26, "2008," an apparent
typographical error.

On June 21, 2013, plaintiff was transferred from Sing Sing to Auburn Correctional

Facility.  He had not received his new dentures and was "[s]till experiencing daily serious pains

from using broken dentures and bleeding from cuts inside [his] mouth."  (Doc. #2 at 7-8).

On July 10, 2013, plaintiff submitted an emergency dental request.  The dentist at Auburn

told plaintiff he must wait for his dental records to arrive.  On August 9, 2013, plaintiff received

notice his dental records arrived.

On August 14, 2013, plaintiff's dentures arrived, but they did not fit properly.  The new

dentures were sent back out to be adjusted and colored.  Plaintiff received his new dentures on

September 11, 2013.  As a result, plaintiff alleges his pain stopped.

**DISCUSSION**

I.      Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the

sufficiency of the complaint under the "two-pronged approach" announced by the Supreme

Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements," are not entitled to the

assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet

a standard of "plausibility."  Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  A

claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted).  Additionally, the Court applies the pleading rules permissively when a pro se plaintiff alleges civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted).  Nor may the Court "invent factual allegations" plaintiffs have not pleaded.  Id.

II.      Eighth Amendment Violation

To assert a viable Section 1983 claim for constitutionally inadequate medical care in violation of the Eighth Amendment, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  This test has both an objective and a subjective component: plaintiff must plead facts showing (i) the alleged deprivation of medical care is "sufficiently serious," and (ii) the officials in question acted with a "sufficiently culpable state of mind."  Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).

A.      Objective Prong: Serious Medical Condition

To satisfy the objective prong of the deliberate indifference test, the deprivation of medical care must be sufficiently serious to deny plaintiff a "minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  In determining whether plaintiff

has met this standard, the Court considers "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

When, as here, "a prisoner alleges a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." Bilal v. White, 494 F. App'x 143, 145 (2d Cir. 2012) (summary order) (internal quotation marks omitted). A claim may be cognizable for a delay in dental care based on factors including the pain suffered by the plaintiff, or the inability to engage in normal activities, such as eating properly. See Chance v. Armstrong, 143 F.3d at 703; Partee v. Grood, 2007 WL 2164529, at *5 (S.D.N.Y. July 25, 2007), aff'd, 335 F. App'x 85 (2d Cir. 2009) ("[I]nsufficient dental treatment may rise to the level of a Constitutional violation if it leads to extreme pain, deterioration of the teeth, and an inability to eat properly.").[8]

Here, plaintiff has alleged his broken dentures caused daily cuts and pain, and inhibited his ability to eat properly. Because of delays in treatment, these problems continued for approximately six months before his referral was submitted, and for another full year after the referral. This is the sort of delay that may constitute an unreasonable deprivation of dental care. See, e.g., Harrison v. Barkley, 219 F.3d 132, 138 (2d Cir. 2000) (one-year delay in treating a

---

[8]     Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

cavity can constitute deliberate indifference).  Although it may become clear at a later stage in

the litigation that these claims are not adequately supported, at this stage, the Court accepts

plaintiff's allegations as true.  Accordingly, plaintiff has pleaded facts sufficient to allege a delay

in adequate dental treatment.

        B.        <u>Subjective Prong: Deliberate Indifference</u>

To satisfy the subjective prong of the deliberate indifference test, plaintiff must plead

facts showing more than mere negligence by defendants.  <u>Hernandez v. Keane</u>, 341 F.3d 137,

144 (2d Cir. 2003) ("Deliberate indifference describes a mental state more blameworthy than

negligence.") (internal quotation marks omitted); <u>see</u> <u>Estelle v. Gamble</u>, 429 U.S. at 105-06

(noting negligence in treatment is insufficient to state a valid Eighth Amendment claim, and

emphasizing "[m]edical malpractice does not become a constitutional violation merely because

the victim is a prisoner").

Specifically, "the deliberate indifference standard requires the plaintiff to prove that the

prison official knew of and disregarded the plaintiff's serious medical needs."  <u>Chance v.

Armstrong</u>, 143 F.3d at 703.  Deliberate indifference may be "manifested by prison doctors in

their response to the prisoner's needs or by prison guards in intentionally denying or delaying

access to medical care."  <u>Estelle v. Gamble</u>, 429 U.S. at 104-05.  However, an "inadvertent

failure to provide adequate medical care" does not constitute deliberate indifference.  <u>Id</u>. at 105.

Plaintiff alleges the three defendants deliberately disregarded his serious, daily pain by

delaying his receipt of new dentures.  The Court will address each defendant in turn.

1.      Reinhard Willem

Defendants argue plaintiff's allegations as to Willem are either too conclusory or implausible to support an inference Willem was deliberately indifferent to plaintiff's dental needs.

The Court disagrees.

According to plaintiff, when Willem examined him on February 9, 2012, plaintiff complained of severe pain, and Willem agreed plaintiff needed new dentures. Willem told plaintiff he would submit a referral for new dentures. However, Willem submitted the referral over six months later, on August 14, 2012. In that six month period, plaintiff submitted two additional emergency dental requests complaining of pain, and Willem personally examined plaintiff on two occasions, in May and August 2012.

Although one plausible inference is Willem simply forgot to submit the referral request and then neglected to check on its status when plaintiff subsequently complained, it is also plausible that Willem intentionally lied to plaintiff and deliberately delayed the referral. The latter inference's plausibility is supported by the allegation that Willem examined plaintiff on May 30, 2012, in response to an emergency dental care request, but he (i) again failed to submit the referral, and (ii) denied plaintiff's requests for pain medication or a soft food diet. Cf. Glover v. Greenman, 2013 WL 1294698, at *6 (S.D.N.Y. Apr. 1, 2013) (plaintiff could not "fairly allege delay in treatment" when he was "provided with medication" repeatedly). Under these circumstances, plaintiff has alleged Willem's deliberate indifference by "a failure to act . . . that evinces 'a conscious disregard of a substantial risk'" of pain and difficulty eating. Chance v. Armstrong, 143 F.3d at 703 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)).

Thus, plaintiff has plausibly alleged Willem knew of plaintiff's daily pain and difficulty eating, and intentionally delayed the dentures referral between February 9 and August 14, 2012.[9]

Accordingly, the motion to dismiss as to Willem is denied.

2.      Allen Jacobson

Defendants argue plaintiff's allegations against Jacobson fail to state a claim because (i) any delay caused by Jacobson's rescheduling plaintiff's August 2012 appointment was de minimis, (ii) Jacobson did not provide plaintiff with care, (iii) the allegation Jacobson falsified plaintiff's records and lied during the grievance process is not actionable, and (iv) Jacobson should not be held liable for supervising Willem.

To be held liable under Section 1983, a defendant must have been personally involved in the alleged constitutional violation. Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001). The personal involvement of a supervisor may be established by showing:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

---

[9]      There are several discrete periods of delay in this case with different alleged causes of the delay. Some of the delays after August 14, 2012, may have been due to negligence or dental malpractice, or may have been reasonable, or may have been due to the actions of non-defendants. For example, it seems implausible Willem deliberately delayed plaintiff's treatment after plaintiff was transferred to another prison and was treated by another dentist. Nevertheless, plaintiff's claim against Willem proceeds based on the sufficiently plausible allegations of Willem's deliberate indifference between February and August 2012. Whether Willem was deliberately indifferent to plaintiff's dental needs thereafter will be borne out in discovery.

While defendants are correct the mere receipt of grievance complaints does not amount to personal involvement, plaintiff here plausibly alleges Jacobson was personally involved because he was informed of the potential Eighth Amendment violation when he personally met with plaintiff in response to his grievance complaint, and then failed to remedy the wrong.  See Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("Personal involvement will be found, however, where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.") (collecting cases); cf. Koehl v. Bernstein, 2011 WL 2436817, at *21 (S.D.N.Y. June 17, 2011), report and recommendation adopted, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011) (dismissing claim based on inadequate dental care when there were no allegations defendants knew of plaintiff's failure to receive dental implants); Partee v. Grood, 2007 WL 2164529, at *5, aff'd, 335 F. App'x 85 (2d Cir. 2009) (dismissing claim based on failure to receive dentures when plaintiff alleged defendants were merely informed of the situation and took no action).

Jacobson met with plaintiff on August 20, 2012, in response to plaintiff's complaints of daily pain.  By the date of their meeting, more than six months had passed since Willem allegedly told plaintiff he would submit a referral for new dentures, and more than two months had passed since Willem told plaintiff the dentures would be ready.  Plaintiff does not allege Jacobson knew (i) the referral request was not submitted by Willem in February, or (ii) the referral request was denied due to a computer records error six days prior to their meeting. Instead, plaintiff alleges Jacobson did nothing in response to this meeting except blame plaintiff for delaying his own dental treatment.

Whether plaintiff is culpable for delaying his own treatment will be adduced during discovery; at this point, plaintiff's allegations support an inference that Jacobson (i) met with

plaintiff in response to his complaints of daily pain, (ii) understood the delay in treatment was

causing plaintiff serious pain and inhibited his eating, and (iii) failed to remedy the delay.

Whether or not Jacobson was aware of Willem's failure to submit the referral, the plausible

medical consequence flowing from Jacobson's inaction was a continuation of plaintiff's daily

pain and difficulty eating.

Because plaintiff sufficiently pleaded Jacobson's personal involvement in the delay in

treatment, the Court holds plaintiff plausibly alleged Jacobson was deliberately indifferent to the

pain caused by the delay in plaintiff's denture work.

Accordingly, the motion to dismiss as to Jacobson is denied.[10]

### 3.   Britta Viereckl-Prast

Defendants argue the claim as to Prast should be dismissed because she never treated

plaintiff and she corrected the computer records error after it was discovered.

The Court disagrees.

Plaintiff alleges on that July 18, 2012, Prast reviewed his dental records, examined his

mouth, teeth, and broken dentures, became aware of plaintiff's severe pain, determined plaintiff

needed new dentures, and recognized the delay in his treatment was "unreasonable."  (Doc. #2 at

12).  Plaintiff alleges Prast nevertheless took no action to ease plaintiff's pain or improve his

chances of receiving dentures until she approved the referral four months later.  The plausible

---

[10]     Similar to Willem, plaintiff cannot support an Eighth Amendment claim as to Jacobson
after his involvement in plaintiff's treatment ceased.  See supra note 9.  During discovery, facts
may be adduced showing exactly when Jacobson's personal involvement in plaintiff's treatment
ended, but at this stage, plaintiff's allegations are sufficient to support Jacobson's liability at least
through August 20, 2012.

consequences flowing from Prast's inaction were four unnecessary months of pain and difficulty eating.[11]

Thus, plaintiff has plausibly alleged Prast knew of his pain and difficulty eating caused by the delays in receiving new dentures, and deliberately disregarded the risk of continued pain by willfully ignoring plaintiff's denture problem.

Accordingly, defendant's motion to dismiss as to Prast is denied.[12]

III.    State Law Claims

Construed liberally, the complaint also contains state law tort claims for dental malpractice and negligence.  Defendants have not moved to dismiss any state law claims. Accordingly, those claims will proceed to discovery.  See 28 U.S.C. § 1367.

---

[11]     The Court notes that the Inmate Grievance Program's Central Office Review Committee stated the referral was approved on October 6, 2012.  (Doc. #2 at 48).  Whether Prast's failure to act caused three rather than four months of plaintiff's pain and suffering does not change the Court's ruling that plaintiff has stated a claim for deliberate indifference.

[12]     Similar to Willem and Jacobson, exactly which periods of delay were attributable to the intentional acts or deliberate indifference of Prast after the July 18, 2012, meeting will be adduced in discovery.  See supra notes 9 and 10.

**CONCLUSION**

Defendants' motion to dismiss is DENIED.

By separate order, the Court will schedule an initial conference.  Plaintiff is directed to

consider whether he wishes to request, at that conference, that the Court appoint pro bono

counsel to represent him in this case.

The clerk is instructed to terminate the motion.  (Doc. #31).

Dated: May 9, 2016
       White Plains, NY

                                  SO ORDERED:


                                  _____
                                  Vincent L. Briccetti
                                  United States District Judge